IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Mark Jackson, | ) | C/A No.: 4:09-729-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| AVX Corporation, a Kyocera Group | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Mark Jackson ("Jackson") filed this employment discrimination case against his former employer alleging he was unlawfully terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 et seq., and of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. This matter comes before the court on the motion of Defendant AVX Corporation, a Kyocera Group Company ("AVX"), for summary judgment [Entry # 16].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

AVX is a manufacturer and supplier of passive electronic components and related products. AVX has several internal operating divisions, including: (1) Elco, which

produces electronic connectors, (2) APTC (Advanced Product Technology Center), which develops advanced products for AVX that are then spun off into different manufacturing locations, and (3) BestCap, which manufactures supercapacitors. Pl.'s Dep. 24:11–15, 28:14–20, 29:18–30:6, 30:6–8; *see* Exh. A to Def.'s Mem. [Entry 16-2] for Pl.'s Dep. These, and other divisions are supported in various ways by a service department called M&E (Machine and Electrical Design Group), which consists of engineers and shop workers who engineer, assemble, and monitor production equipment. *Id.* at 25:25–26:7, 26:8–27:8, 28:14–20.

On October 16, 1995, when Jackson was 42 years old, the manager of AVX's M&E department, Charlie Kunkle, hired him as a Project Engineer. In 1996, Jackson was reassigned to work for the Elco division under Elco's Vice-President Bob Wright. In 1997, Jackson returned to M&E, where he provided service to Elco and other AVX manufacturing divisions. Charles Kunkle Aff. ¶¶ 4–6; *see* Exh. B to Def.'s Mem. [Entry 16-6] for copy of Kunkle Aff.

Jackson's performance started becoming an issue in 2003 while he was involved with the Garmin machine project. The Garmin machine is an airbag connector machine designed and built by an outside supplier. The Garmin machine produced defective, damaged connectors at a low volume, so Jackson was the tasked of redesigning the machine to make it more reliable. Pl.'s Dep. 62:4–21. According to AVX, however, Jackson was unsuccessful in performing his task, as the machine continued to produce defective items. *Id.* at 66:18–67:2. Jackson claims that he "made a number of

improvements including to the connector gripping device so that when it would crash, it wouldn't knock things totally out of alignment," and that further changes he implemented made it work more reliably. *Id.* at 62. Therefore, Jackson claims that his performance was considered good. Ultimately, AVX claims another employee, Terry Hucks, resolved the Garmin defects, but Jackson claims that Hucks was not involved in the redesign of the equipment. *Id.* at 63. Instead, Jackson claims that Hucks' contribution related to a quality problem involving the product and a nick's occurring—"the final one percent issue,"—that Jackson claims was "not part of his responsibility to assess." *Id.* at 65–69.

Also in 2003, Jackson was assigned to another Elco project called AutoLiv, which also involved airbag connectors. AVX had been hired as the global supplier for the electrical connectors necessary for AutoLiv's airbag ignition systems, and Jackson was tasked with designing and overseeing the manufacture of the robotics equipment that AVX used to produce the AutoLiv airbag connectors. Pl.'s Dep. 74:22–9, 77:1–13, 78:9–13, 80:17–20. Jackson spent the majority of his working time on the AutoLiv project from 2003 until mid-2005. *Id.* at 74:1–4, 86:20–25, 105:21–25, 107:4–13, 108:3–13.

According to AVX, the AutoLiv project faired poorly under Jackson, (*id.* at 197:4–198:2), as the equipment was delivered and installed late, (*id.* at 49:16–21, 121:21–23, 188:5–11, 189:17–190:7), over budget, (*id.* at 126:2–21, 136:18–137:24), and most critically, with a production time slower than expected, leaving AVX unable to meet the commitments it had made to AutoLiv (*id.* at 49:16–23, 111:9–14, 121:12–15,

121:21–23). According to Jackson, he was not to blame for the machine's being significantly over budget and installed late, because he was only required to insure that the design build was on schedule. He argues that the failures of the production and delivery aspects of the AutoLiv project should not be imputed to him as the designing engineer. *Id.* at 80–81. Jackson concedes that the machine was 10% slower than expected. *Id.* at 112.

In June 2005, Elco Vice-President Bob Wright informed M&E manager Kunkle that Jackson was no longer acceptable as a project engineer for AutoLiv or for any other Elco project, which accounted for a significant portion of Jackson's work. Pl.s' Dep. 115:5–18, 137:25–138:22, 163:13–164:12, 260:3–21. Kunkle asked Wright to reconsider, but was unsuccessful. Pl.'s Dep. 141:17-143:4; Kunkle Aff. ¶ 10.

Meanwhile, Jackson had begun limited work for the BestCap manufacturing division in the spring of 2005. The principal engineer of that division, Lee Shinaberger, soon criticized his work as being overdesigned and without appropriate control over costs. Pl.'s Dep. 146:13–21, 147:12–15. Shinaberger also noted that Jackson was a difficult coworker. *Id.* at 151:6–16.

Jackson's early performance reviews at AVX indicated that his performance was adequate, although not exemplary. He received a 3 out of possible 6 on his 1996, 1997, and 1998 annual evaluations. For 1999 through 2004 Jackson received a 4 rating on his annual evaluations, the majority of which were completed by Kunkle. Kunkle Aff. ¶ 5. Jackson received an overall rating of 2 on his performance evaluation in June 2005,

primarily based upon his poor performance on the AutoLiv project and also adversely affected by the criticisms from his BestCap involvement and his peer review comments. *See* Exh. 9 to Pl.'s Dep.; Kunkle Aff. ¶ 11. The peer review comments reflected Jackson was extremely difficult to work with and that he did not want to work on projects unless they were done his way.

In November 2005, Jackson was invited to an Elco meeting with the purpose of potentially having him work on Elco projects again, particularly AutoLiv. Pl.'s Dep. 171:25–172:19 and Exh. 13; Kunkle Aff. ¶ 12. The meeting included Jackson, Kunkle, Bob Purple, and Hucks. The purpose of the meeting was to discuss improving the cycle time of the AutoLiv machine. Pl.'s Dep. 174:22–175:1. Kunkle's memory is that Jackson, when welcomed back by Hucks, said that he preferred not to be involved with Elco again. Kunkle Aff. ¶ 14. Jackson does not remember making this statement. Pl.'s Dep. 173:15–23. After the meeting, Kunkle expressed his disappointment with Jackson regarding his position that he did not want to work with Elco. Kunkle Aff. ¶ 15. Jackson does not remember this statement either. Pl.'s Dep. 174:8–16. Regardless, it was clear to Kunkle by November 2005 that no relationship between Jackson and Elco could be salvaged. Kunkle Aff. ¶¶ 10, 16.

Because Jackson could no longer be used on Elco projects, Kunkle assigned him several significant projects with BestCap in late 2005 and early 2006. Pl.'s Dep. 209:2–6. By January of 2006, Jackson told Kunkle he did not have enough work, and Jackson was in a dispute with Kunkle and BestCap over his performance. Pl.'s Dep. 211:14–212:3,

221:7–10, 222:23–223:8, 224:20–225:3, 225:11–227:17; Exh. 15 to Pl.'s Dep.; Kunkle Aff. ¶ 19. Jackson asserted that Kunkle was ignorant and did not know what he was talking about when he criticized Jackson's performance and that criticism of his performance by Kunkle's superior Bill Burns, Director of Corporate Facilities, was equally unfounded. Pl.'s Dep. 215:18–216:5. Jackson viewed Burns as knowing little about mechanical design and being "over his head." *Id.* at 223:22–224:4. This turn of events resulted in Kunkle and Burns recommending Jackson's termination by letter dated February 3, 2006, (Kunkle Aff. ¶ 20 and Attach. A), approximately one-and-a-half years prior to Jackson's prostate cancer diagnosis.

The normal AVX termination procedure required the involvement and input of the Human Resources Department (HR). Mary Ellen Wolinski of HR reviewed Kunkle's and Burns' decision to terminate Jackson. Wolinski recognized Jackson's performance problems, but felt given his tenure and generally satisfactory performance prior to the 2003/2005 Elco projects, he should be given a chance to improve before being terminated. Wolinski Aff. ¶¶ 11–12, *see* Exh. C to Def.'s Mem. for Wolinski Aff. [Entry 16-7]. Therefore, AVX decided to not terminate Jackson; instead, Kunkle and Wolinski met with him on February 15, 2006, and advised him that his performance needed to improve significantly. *Id.* ¶ 13; Kunkle Aff. ¶ 21. Jackson describes Wolinski's efforts as a "slap in the face," because he believed he had done nothing wrong and had been falsely accused by others. Pl.'s Dep. 232:1–8.

In June 2006, Jackson received a 3 rating in his evaluation, but his relationship with BestCap and Shinaberger had seriously deteriorated by the winter of 2006–2007. *Id.* at 244:4–24. Jackson said that he no longer felt that he was a member of the BestCap team (Exh. 20 to Pl.'s Dep.), and he acknowledged an increasingly poor relationship with Shinaberger (Pl.'s Dep. 252:15–18, 262:14–19, 263:15–18), whom he admits was upset with him because he was not performing the engineering tasks for BestCap in an acceptable manner (*id.* at 264:8–13). By late spring 2007, Shinaberger told Kunkle he preferred that Jackson not work on BestCap projects. Kunkle Aff. ¶ 23. Kunkle, however, continued to try to utilize Jackson on BestCap projects, realizing that Jackson would no longer have a job to perform at AVX if he could not work with BestCap. *Id.* ¶ 24.

Jackson was diagnosed with prostate cancer in June or July of 2007 and told Kunkle about his condition sometime shortly thereafter. Pl.'s Dep. 51:2–52:14, 267:18–22, 270:17–25. Additional performance issues concerning Jackson and his work for BestCap at the Juarez facility arose in August 2007, and he received a 2 rating in his annual performance evaluation dated September 9, 2007. *Id.* at 278:22–279:2 and Exh. 22. At that time, AVX gave Jackson what he described as a "disappointing" salary increase. *Id.* at 279:22–280:5. The evaluation included goals for the upcoming year and a discussion by Kunkle and Burns of Jackson's performance deficiencies. *Id.* at 284:11–21, 286:14–18, 287:25–288:2, 293:22–294:2, Exh. 23. Jackson acknowledged that problems existed with the projects to which he had been assigned, but he disavowed

any responsibility for those shortcomings. *Id.* at 286:20–24, 288:3–9, 292:2–6; Kunkle Aff. ¶¶ 27–28.

Kunkle and Burns met after Jackson's September 9, 2007 evaluation to discuss what should be done regarding Jackson's continued employment. Kunkle Aff. ¶ 29. Based upon his poor performance, his bad relationships with BestCap employees and others, and his inability or unwillingness to improve, they decided that termination of Jackson's employment was the only option. *Id.* After consulting with Wolinski in HR, AVX decided that termination of Jackson's employment was appropriate. *Id.* ¶ 30; Wolinski Aff. ¶ 14.

On September 11, 2007, Jackson was out on medical leave for approximately a week to receive treatment for prostate cancer. Pl.'s Dep. 52:21–53:15. After his return on September 17, 2007, he was terminated. *Id.* at 52:25–53:3. At the time of his termination, Jackson was 54, Burns was 60, and Kunkle was 52. Jackson filed his Complaint against AVX on March 20, 2009, alleging age and disability discrimination.

II. Discussion

A. Standard of Review

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

B.    Analysis

1.    Jackson's Disability Discrimination Claim

Jackson appears to contend that he was fired because of his "disability"—prostate cancer—or in the alternative, because of a perceived disability of prostate cancer. The general rule against discrimination in the ADA is set forth in section 42 U.S.C. § 12112(a), which provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The initial issue before the court is whether Jackson is a qualified individual with a disability under the ADA.

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the Act, a "disability" is defined as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; 2) a record of such impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Thus, an ADA plaintiff must satisfy the following two requirements

to establish a prima facie case of discrimination:  (1) that plaintiff has an impairment; and (2) that the impairment interferes with a major life activity.

Courts are guided by the Code of Federal Regulations in interpreting the ADA. The regulations define a "physical or mental impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine . . . ."  29 C.F.R. § 1630.2(h)(1). The regulations describe the following types of activities that must be affected in order to qualify as major life activities:  "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

There is no dispute that Jackson was diagnosed with and treated for prostate cancer.  Hence, under the definition set forth in the regulations, Jackson suffered a physical impairment.  Typically, however, diagnosis does not prove disability.  *See* 29 C.F.R. pt. 1630, App., § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."); *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566–67 (1999) (holding that while some conditions are invariably substantially limiting, to determine whether other conditions are disabling requires an individualized assessment).

According to his brief, Jackson appears to assume there exists a "per se" rule of disability for persons diagnosed with prostate cancer. The undersigned is unaware of any such a per se rule's having been adopted by the Fourth Circuit. Cases from other circuits that have considered this issue have held that a "plaintiff's claim of cancer itself is not enough to fulfill the ADA requirement of there being a substantial limitation on major life activity." *See, e.g., McNiff v. Town of Dracut*, 433 F. Supp. 2d 145, 155 (D. Mass. 2006) (noting general rule is that, under ADA, cancer is "impairment" but not necessarily "disability" without proof of impact on major life activity).

Accordingly, the court must consider the specific facts of Jackson's case in its assessment of whether he was disabled at the time of his termination. Although Jackson fails to expressly identify which of his major life activity or activities was impacted, the court presumes that he seeks to show that he was substantially limited in the major life activity of working. *See Gupton v. Virginia*, 14 F.3d 203, 205 (4th Cir. 1994); *Barrera v. Dalton*, 117 F.3d 1413 (4th Cir. 1997) (unpublished). Under the ADA, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I). Instead, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I); *see also Sutton v. United Air Lines*, 527 U.S. 471, 49 (1999) (*superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553)).

Even giving Jackson the benefit of all inferences, he has failed to show that he had an impairment that substantially limited a major life activity. Because Jackson has failed to show (or to even attempt to show) that the mere diagnosis of prostate cancer substantially limited his ability to perform a class or broad range of jobs, he has not established a substantial limitation in the major life activity of working. Based on these factors, Jackson has failed to demonstrate that he suffered a "disability" under the ADA.

Jackson also argues that he was "regarded as impaired" by AVX and that being regarded as having an impairment is sufficient to establish having a "disability" for purposes of the ADA. *See* Pl.'s Opp'n 8-9 (*citing* 42 U.S.C. § 12102(2)). Although correct that one who is "regarded as impaired" may be found as suffering a "disability," Jackson has not provided any cogent facts indicating AVX regarded him as impaired. He merely claims that prostate cancer "can be a serious medical condition" and that his supervisor "perceived the Plaintiff as disabled by instructing the Plaintiff to report the diagnosis of his condition when it was unnecessary within the Defendant's own policies." Pl.'s Mem. 8-9. Jackson does not attempt to develop this argument further, nor does he point to any precedent supporting his perception-of-disability argument. As explained by the Fourth Circuit, "[t]he fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001) (*quoting Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (footnote omitted)). Jackson has not established

anything more than that his AVX supervisor was aware of his diagnosis. Viewing the facts in the light most favorable to Jackson, the court finds he has not established that AVX perceived him as having a disability for purposes of the ADA.

Even assuming, arguendo, that Jackson were to meet the initial hurdle of establishing he is a "qualified individual with a disability," summary judgment is still appropriate because Jackson has failed to prove the other elements necessary to establish a prima facie case of discriminatory discharge under the ADA. In order to establish a prima facie case of discriminatory discharge based on disability, Jackson is required to prove the following by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances giving rise to an inference of unlawful discrimination. *See Ennis v. National Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).

Jackson has not demonstrated that, at the time of discharge in September 2007, he was performing his job at a level that met AVX's legitimate expectations. AVX cites to Jackson's poor performance dating back to 2003. Although Jackson believes he was performing his job at a level that met AVX's legitimate expectations, the proper analysis is whether AVX perceived Jackson's efforts as reasonable. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (noting it is the "perception of the decision maker," "not the self-assessment of the plaintiff" that is important in determining performance and dismissal matters).

The court finds AVX's evaluation of Jackson is supported by the record and that Jackson has presented no genuine issue of material fact showing that he was performing his work at a level that met AVX's reasonable expectation. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). The undisputed record shows that the leadership of Elco and BestCap both indicated their preference that Jackson not be assigned to their projects because of his prior performance issues.

At summary judgment, the non-moving party has an obligation to present evidence to save his allegations from the status of speculation, and must respond with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1288, n.4 (4th Cir. 1985). Although Jackson may sincerely believe that he was subjected to discrimination by AVX, a plaintiff claiming employment discrimination cannot defeat a properly supported motion for summary judgment with unsupported speculation or allegations of discrimination. *Ross*, 759 F.2d at 365; *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (a party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another.").

Jackson appears to misapprehend the standard on summary judgment by claiming that AVX fails to present the facts in the light most favorable to him. "When a motion for summary judgment is properly made and supported, an opposing party may not rely

merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Jackson is likewise mistaken that "[w]hen dealing with summary judgment the Plaintiff is only required to point to issues of fact in the record." Pl.'s Opp'n 11. More is required of a plaintiff. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Much of the record is undisputed, and as such, the court cannot ignore those facts fatal to Jackson's case that Jackson does not specifically contest as showing a genuine issue for trial.

Jackson argues that AVX is mistaken about his failures to perform on several key projects by claiming that any failures were not his responsibility. *See* Pl.'s Opp'n 10–14. However, Jackson's denial is irrelevant to the assessment by AVX of Jackson's performance and its perception of his conduct as the basis for the employment action. *See Hill v. Michelin, N.A.*, 252 F.3d 307, 315 (4th Cir. 2001) (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (internal quotation marks omitted)).

Furthermore, the temporal nexus between Jackson's leave for cancer treatment and his termination is insufficient on its own to establish a prima facie case of discrimination.

For all of the reasons set forth above, the court concludes that Jackson has failed to proffer evidence sufficient to establish a prima facie case of discrimination. Even if Jackson could make a prima facie case of discrimination, AVX has articulated legitimate reasons for its actions and Jackson cannot establish that AVX's proffered reasons were merely a pretext for discrimination.

AVX asserts that Jackson was ultimately terminated for his admitted refusal to improve his performance. Def.'s Mem. 15. Accordingly, the burden of production shifts back to Jackson to show that the reasons suggested by AVX were merely a pretext for discrimination. *Hill v. Lockheed Martin Logistics Mgmt.*, 355 F.3d 277, 285 (4th Cir. 2004). Evidence of pretext sufficient to permit the employee to reach a jury may be indirect, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981), such as a demonstration "that similarly situated employees were not treated equally." *Id.* at 258. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253–54.

Jackson can demonstrate pretext only by providing the court with admissible evidence that AVX's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). The record is utterly bereft of any evidence or argument proffered by Jackson to counter AVX's legitimate,

non-discriminatory reason for terminating him, much less to prove that those reasons were a sham. In fact, the record reveals that AVX continued to employ Mickey Hayes as a manager in the M&E area after Jackson was terminated. Pl.'s Dep. 56:2–12, 309:24–310:13; Wolkinski Aff. ¶ 17. Mr. Hayes is both older than Jackson and experienced the same medical problems as he did. Kunkle Aff. ¶ 32.

Therefore, Jackson has not proven AVX's reason for termination was a mere pretext, and the undersigned recommends that AVX's motion for summary judgment be granted as to Jackson's ADA claim.

### 2.    Jackson's Age Discrimination Claim

AVX next argues that Jackson fails to establish discrimination based upon his age. Age discrimination claims are governed by the ADEA. Under the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff has the initial burden of demonstrating a prima facie case of discrimination. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). In order to prove a prima facie case of discriminatory discharge, Jackson must show the following: (1) he is a member of a protected class; (2) he was qualified for his position and his job performance was satisfactory; (3) he was terminated; and (4) other employees who are not members of his protected class were retained under apparently similar circumstances. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310-12 (1996). The fourth element can also be satisfied by showing other circumstances giving rise to a reasonable inference of unlawful discrimination. *Id.* If Jackson establishes a prima facie case, the burden shifts

to AVX to produce a legitimate, nondiscriminatory reason for the termination. *Burdine*, 450 U.S. at 254. This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

Once a defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (*citing Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143.

Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that AVX intentionally discriminated against Jackson remains at all times with Jackson. Jackson must carry his ultimate burden of persuading the fact-finder that "but for" his age, Jackson would not have been discharged. *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009) (explaining that, under the ADEA, the "but-for" standard, not the "motivating-factor," standard applies).

Jackson has failed to present any evidence to support his claims of age discrimination. In his opposition brief, Jackson claims that the "evidence is that all engineers that worked with the Plaintiff and remained employed with the [Defendant] were younger than the Plaintiff." Pl.'s Opp'n 15. Jackson distorts the record. The record itself reveals only that Jackson *believes* that some of the engineers were younger than he.

Pl.'s Dep. 204:1–207:10. Jackson's testimony in the remainder of his deposition likewise reflects his admission that he has "no way of knowing for sure whether he was replaced by a younger or less experienced individual." *Id.* at 298:4-299:5, 303:1-19.

The undisputed evidence reveals that after Jackson's termination, AVX continued to employ as a manager in the M&E area, Mickey Hayes, who is older than Jackson and was likewise treated for prostate cancer. See discussion above and Kunkle Aff. ¶¶ 33–34. Without more than speculation to support his theory that he would not have been terminated but for his age, Jackson's age discrimination claim fails. *See Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (explaining that conclusory allegations of discrimination are insufficient); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (a plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of [] discrimination[,]" nor are "unsubstantiated allegations and bald assertions" concerning plaintiff's own qualifications sufficient (internal quotation omitted)). Plaintiff may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Barber v. Hosp. Corp. of Am.*, 977 F.2d 874–75 (4th Cir. 1992). Accordingly, the undersigned recommends summary judgment for AVX on Jackson's claim of age discrimination.

Even assuming, arguendo, that Jackson had established a prima facie case of discrimination, summary judgment is still appropriate. AVX has proffered a legitimate, nondiscriminatory reason for his dismissal, and Jackson has failed to submit evidence that the reason is merely pretext for a discriminatory reason. As discussed above in

connection with Jackson's claim of discrimination under the ADA, AVX terminated Jackson's employment for performance-related reasons. Jackson presents no evidence to the contrary other than his argument that his performance was adequate and that any issues with projects on which he worked were caused by others.

As with the ADA claim, it is not up to the court "to decide whether the reason [for termination] was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins*, 203 F.3d at 279 (internal quotation omitted); *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, . . . , as long as the employer does not violate the ADEA."); *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer.").

Because Jackson fails to meet his burden of presenting sufficient evidence to create an issue of fact as to discrimination, both his ADA and ADEA claims fail and summary judgment is appropriate.

III.     Conclusion

For the reasons set forth above, it is recommended that AVX's Motion for Summary Judgment [Entry # 16] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

July 7, 2010                                    Shiva V. Hodges
Florence, South Carolina                       United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**